## GEORGE ROLAND WHITTINGTON *v.* STATE OF MARYLAND

[No. 228, September Term, 1969.]

*Decided February 10, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Jerome F. Cohn* for appellant.

*James F. Truitt, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles*

*E. Moylan, Jr., State's Attorney for Baltimore City,* and *Fred K. Grant, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

In *Nutter v. State,* 8 Md. App. 635 (1970), we discussed the question of the disclosure of the identity of an informer. We enunciated a general rule and an exception to it. The State has the privilege to withhold from disclosure the identity of informers;[1] except, on the issue of guilt or innocence, and upon demand by the defendant, the trial court may, in the exercise of judicial discretion, compel such disclosure upon determination that it is necessary and relevant to a fair defense.[2]

If demand is not made, disclosure is waived. When proper demand is made by a defendant, the burden is upon him to establish by a preponderance of the evidence that the informer's identity is, in fact, necessary and relevant to a fair defense. As the court's determination includes the consideration of such factors as the nature of the crime charged; the importance of the informer's identity to the issue of innocence or guilt, as for example, whether or not the informer was an integral part of the illegal transaction and the possible significance of his testimony; and the possible defenses, the defendant may adduce such relevant and material evidence as is pertinent thereto. Once the defendant establishes by a preponderance of the evidence that the identity of the informer is necessary and relevant to a fair defense, the burden shifts

---

1. Of course, to make the privilege of nondisclosure applicable in the first place, there must be an informer—that is a person within the rationale of the rule, used by the police as a source of information relating to criminal activities or who was a part of the illegal transaction—whose identity was unknown to the defendant but known to, or reasonably ascertainable by, the police. The existence of such person would not necessarily be disclosed by discovery procedures since the State is only obliged, upon proper motion, to furnish a defendant with a list of the names and addresses of the witnesses whom it intends to call to prove its case in chief. Md. Rule 728 a 3.

2. If the informer testifies for the State, the privilege may not be invoked by it.

to the State. It must, by clear and convincing evidence,[3] rebut the showing by the defendant that the identity of the informer is necessary and relevant to a fair defense. If the trial is before a jury, such evidence adduced by the defendant and the State shall be out of the presence of the jury. The trial court shall make its determination whether or not to compel disclosure on the evidence before it, compelling disclosure only when the necessity for the identity, and its relevancy to a fair defense is demonstrated, giving due consideration to the nature of the crime charged, and balancing the public interest in protecting the flow of information to the police against the defendant's equal if not predominant right to a fair defense. In each case, the determination must rest on its own particular circumstances.

George Roland Whittington (appellant) was charged with violations of the narcotics laws in three indictments. No. 8003 alleged the felonious sale (1st count), possession (2nd count), and control (3rd count), of the narcotic drug, Methadone, on 10 December 1968. No. 8004 alleged the felonious possession (1st count), and control (2nd count), of Methadone, and the unlawful possession of narcotic paraphernalia (3rd count), on 13 December 1968. No. 821 alleged the felonious possession (1st count), and control (2nd count), of Methadone on 22 January 1969. The indictments were jointly tried and he was found guilty generally under each indictment at a court trial in the Criminal Court of Baltimore. A general sentence was imposed upon each conviction, to run consecutively, for a total of 12 years.

As to 10 December 1968 a police officer testified that, while working as an undercover agent and in the company of two "sources" (informers), he met appellant and appellant sold him 16 capsules containing a white powder

---

3. We adopt in this regard the burden as to the evidence imposed upon the prosecution to permit a judicial identification after an illegal pretrial confrontation. See *United States v. Wade*, 388 U. S. 218, 240. Clear and convincing evidence is more than a preponderance of the evidence and less than evidence beyond a reasonable doubt and we think it apposite to the matter at hand.

for $20.[4] Appellant counted out the capsules from a brown manila envelope which he took from his pocket. It was shown that upon analysis the powder proved to be Methadone. The officer discussed the possibility of buying a larger quantity of drugs from appellant and they arranged to meet the next day. The officer and appellant met the next day and appellant agreed to let him have 400 capsules of the drug for $400, the exchange to take place on 13 December at Fulton and Lexington Streets at 3:30 P. M. It was not shown that the informers were then present. At the time designated the officer went to the location as planned and met appellant. Two other detectives were at "a prearranged location" to observe what would occur. Appellant said he did not have the stuff, "he would have to go home and get it or he would have to see if his boy was in the bar around the corner, see if he had it." Appellant went to the bar and came back with two men. The officer thought the men knew him as a policeman so he signaled the other two detectives. They came over and appellant was arrested under the authority of a warrant which had been obtained on 10 December 1968. Appellant was searched; a hypodermic needle and two capsules containing a white powder were recovered from his person. It was shown that upon analysis the white powder was Methadone. The officer testified that from his experience as a narcotics officer the needle was of the type used to inject narcotic drugs "into the veins and system."

On 22 January 1969 the officer, in the company of another officer, again saw appellant standing with several other men on the southeast corner of Fulton Avenue and Lexington Street. As the officers approached, appellant dropped a brown envelope. The police recovered the envelope, saw that it contained a quantity of white capsules and arrested appellant. There were 47 capsules; they contained Methadone.

---

4. The officer said, "I was posing as a dealer from East Baltimore and I told him that I ran out of the stuff and I would like to get as much from him as I could with the money I had."

On cross-examination defense counsel asked the names of the informers who were with the officer on 10 December. The officer said he did not know their real names, "I know them as nicknames." He refused to reveal the identity of the informers. Defense counsel requested the court to require the officer to disclose the identity of the informers, the State objected and the court refused to compel disclosure. The matter was not pursued further.

Appellant, testifying in his own behalf, admitted being in the presence of the officer and "two other fellows" on 10 December. He said, however, that, although he told the officer his name, the conversation and transaction was between the officer and appellant's companion. He remembered the officer saying he had come from East Baltimore to buy some "stuff" but denied that it was he who sold the narcotics to the officer—"it was the fellow that was with me." He admitted being arrested on 13 December but denied any narcotics or narcotic paraphernalia were found in his possession. He admitted being again arrested on 22 January 1969, and that the officers picked up a brown envelope from the street but denied that he dropped it or ever had it in his possession. He admitted that he had been using drugs since 1966 but had never been "in the business of selling drugs." He claimed he only knew the man from whom he alleged the officer bought the drugs on 10 December as "Ray Boy." He was on bail on 22 January 1969.

Appellant contends, (1) that the lower court erred in not requiring disclosure of the identity of the two informers who were with the officer on 10 December and (2) that the evidence was not sufficient to sustain the convictions.

## (1)

At the time demand was made for the disclosure of the identity of the two informers and the court ruled, there was no conflict in the testimony. Nothing appeared in the evidence concerning the informers except that they were present on 10 December when appellant sold the

officer the contraband. There was no showing that they imparted any information concerning appellant to the police, that they were participants or accessories to the crime or that they were in any way involved in the illegal transaction. The conversation leading to the transaction and the transaction itself was only between the officer and appellant. In short, from the evidence, the informers were in no way directly involved.[5] The officer, under oath, described in detail what occurred and was cross-examined by appellant. The evidence given by him was, at that time, not contradicted or refuted. There is nothing in the due process clause of the Fourteenth Amendment that required the trial court to assume that the officer was committing perjury. See *McCray v. Illinois,* 386 U. S. 300, 361. Thus appellant did not meet his burden of showing by a preponderance of the evidence in furtherance of his demand for disclosure of the informers' identity that such disclosure was necessary and relevant to a fair defense. At the time demand was made and ruling sought by appellant there was no evidence before the court sufficient to show that the informers were, in fact, witnesses important to him and he did not offer or proffer such evidence. Thus there was nothing for the State to refute and no burden as to the evidence shifted to it. Therefore, we cannot say that the refusal of the lower court to compel disclosure as demanded was an abuse of judicial discretion in the circumstances. See *State v. Boles,* 97 S.E.2d 476 (N. C. 1957). And as there was no further demand made when appellant adduced evidence controverting the State's evidence, so as to present a conflict, disclosure subsequent to the first demand was waived. We hold that the refusal to compel disclo-

---

5. We note that evidence adduced by the State and by appellant after the ruling did not indicate that the informers acted as such with respect to appellant or the offense charged. However, that they were in fact informers as characterized by the officer, and used by the police as sources of information was not disputed. Since they were informers, even though not in connection with the instant case, the State could claim its privilege of nondisclosure of their identity.

sure as demanded does not compel reversal of the judgments.[6]

## (2)

With regard to the sufficiency of the evidence to sustain the convictions, it is patent that there was credible evidence from which the trial court could be convinced beyond a reasonabel doubt that appellant was guilty of the offenses charged. See *Williams v. State,* 5 Md. App. 450. Thus its judgments on the evidence were not clearly erroneous and we may not set them aside. Md. Rule 1086.

*Judgments affirmed.*

---

6. We note that in any event the convictions of the crimes committed on 13 December 1968 and 22 January 1969 would not be affected by nondisclosure of the informers' identity. It did not appear that the informers were present at those times or that they had any connection with the occurrences on those dates. It was not shown that the warrant under which appellant was arrested on 13 December was not valid on its face and if the informers played any part in the establishment of probable cause for its issuance, their identity would be privileged as to it.

We further note that the question here does not involve "suppression" of evidence as such, which is another matter. And it is not a question of allowing false evidence to go uncorrected when it appears, even though not solicited. See *Giles v. Maryland,* 386 U. S. 66, 74, citing *Napue v. Illinois,* 360 U. S. 269. We note, however, that the Court in *Giles* left open the questions "whether the prosecution's constitutional duty to disclose extends to all evidence admissible and useful to the defense, and the degree of prejudice which must be shown to make necessary a new trial." 386 U. S. at 74.