Louis S. KOVASH, Jr., Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–73–232.

Court of Criminal Appeals of Oklahoma.

Feb. 11, 1974.

Rehearing Denied Feb. 28, 1974.

Don Hamilton and Jon L. Hester, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Stan Chatman, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant Louis S. Kovash, Jr., hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Oklahoma County, Case No. CRF–72–2097, for the offense of Unlawful Distribution of Controlled Substance, Barbiturate. His punishment was fixed at three (3) years imprisonment, and from said judgment and sentence a timely appeal has been perfected to this Court.

At the trial, Officer Michael Brown of the Oklahoma City Police Department testified that on June 29, 1972, he was assigned as an undercover narcotics officer with the vice detail. Officer Brown further testified that on that date he, along with a confidential informant, went to the Zig Zag Club, located in Oklahoma City, for the purpose of looking for narcotics dealers. He testified that at the Zig Zag Club he met a man known only as "Goat." Officer Brown testified that he and the confidential informant went out to the parking lot with Goat and once outside Goat saw a car across the parking lot and ran over to it and began talking to the defendant who was in the car. He indicated that Goat then returned to him and the informant and the defendant got out of the car and started walking toward them. Officer Brown stated that Goat once again left them and met the defendant as he walked across the lot and the two of them (Goat and the defendant) walked about ten feet past him and stopped at a location about five feet from the door of the club. This witness further testified that the defendant then removed something from his right front pants pocket, with his right hand, and placed it in Goat's left hand. The defendant then walked into the Zig Zag Club and Goat walked directly to Officer Brown. Officer Brown indicated that Goat's left hand was in complete view from the time that the defendant placed something in it until Goat walked over to Brown, reached out his left hand, and placed twelve (12) red capsules into Officer Brown's right hand. Upon receiving the capsules, Officer Brown then gave Goat $6.00 in State evidence money. Officer Brown further testified that Goat placed the $6.00 in a pouch at his side and returned inside the club. Officer Brown and the informant remained outside the club for a brief period and then also went back into the club where they remained for approximately 15 minutes during which time the defendant and Goat did not come in contact with each other. Officer Brown and the informant left the club and drove to a pre-arranged location where the evidence was turned over to Detectives Cochrane and McBride of the Oklahoma City Vice Detail.

Narcotics Detective David McBride of the Oklahoma City Police Department, testified that on June 29, 1972, he, along with Detective Cochrane, conducted surveillance of Officer Mike Brown at the Zig Zag Club from a location across the street. Testimony from Detective McBride substantiated Officer Brown's testimony as to the movement of the parties in the parking lot. He also identified State's Exhibit #1 as the red capsules given to him by Officer Brown.

The defendant stipulated that the Crime Bureau made an analysis of the capsules. Defendant also stipulated that the Chemical Analysis Report stating that the evidence was "identified as containing barbiturate" could be admitted. Defendant further stipulated that the evidence could be offered without objection.

The defendant did not take the stand and offered no evidence in his behalf.

Defense counsel argues, in his first proposition, that the trial court erred in refusing to require the State to disclose the identity of a confidential informant. In asserting error, defense counsel has relied upon Roviara v. United States, 353 U. S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1959). In *Roviara*, supra, the informant whose identity was sought had been an active participant in the illegal activity. The informant had not only helped set up the crime, but had also been a participant in the actual conduct that was a crime. Under circumstances similar to those found in *Roviara*, supra, this Court feels that it is error to fail to disclose the identity of the informant provided a timely request for such identification has been made. However, in the instant case, we are dealing with circumstances that differ crucially from *Roviara*, supra. The informant did not take an active part in the occurrence in any way. He had not set up the meeting, nor was he a participant in the exchange

that constituted the illegal conduct. Apparently, this is the first time that this Court has been called upon to speak to the issue presented in the instant case; however, the Court of Special Appeals of Maryland addressed the same issue in Whittington v. State, 8 Md.App. 676, 262 A.2d 75 (1970). This Court agrees with the decision reached by the Maryland Court, that under the circumstances presented in the instant case, it is not necessary that the State divulge the identity of the confidential informant. In the instant case, at the time defense counsel sought the identity of the informant, there was nothing in evidence that concerned the informant except that he was present when the undercover officer obtained the barbiturate. Testimony was not in conflict and there was no assertion that the informant had been involved in the transaction. The undercover agent had described the occurrence in full detail and defense had cross-examined. Although the officer provided the only testimony as to the events that constituted the illegal conduct, there is nothing in the due process clause of the Fourteenth Amendment that requires an assumption that the officer was committing perjury. See McCray v. Illinois, 386 U.S 300, 361, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). The testimony of the officer was not contradicted or refuted. The burden is upon the defense to show that the preponderance of the evidence substantiates that disclosure relevant to a fair defense. This the defense did not do in the instant case. We cannot, therefore, say that there was an abuse of judicial discretion, under these circumstances, by the trial court's refusal to require that the State disclose the informant's identity.

■■ In defense counsel's second proposition, it is argued that the trial court erred in permitting the jury to have reread to them, during their deliberation, certain portions of testimony from the trial. Title 22 O.S.1971, § 894 states:

"After the jury have retired for deliberation if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to county attorney and the defendant or his counsel, or after they have been called."

We have carefully examined the record and have found that the circumstances that surround the re-reading of the testimony in the instant case are in compliance with the statutory requirements. This Court has interpreted this statute as not creating an absolute right to have testimony re-read, but a matter left to the discretion of the trial court subject to review by this Court. Jones v. State, Okl.Cr., 456 P.2d 610 (1969). In the instant case, the trial court insured that only that portion of the testimony over which the jury disagreed was re-read. We cannot say that to allow this re-reading of testimony was an abuse of the trial court's discretion.

■ It defendant's third proposition of error that the trial court erred in overruling his pre-trial Motion to Quash Information, Demurrer, and Special Appearance and Motion to Quash Preliminary Hearing. It is argued that the Information alleges a sale by the defendant to Officer Brown. We have carefully examined the subject Information and find no merit to this contention. The Information charges the defendant with Unlawful Distribution, and not sale. The reference to sale found in the Information relates to the manner employed to accomplish the distribution and is not the basis for the charge. Defendant further argues that the evidence presented at the preliminary hearing was insufficient to bind the defendant over for trial. This Court has held that on preliminary hearing the State is only required to show that a crime has been committed, and probable cause that the defendant committed the crime, to have the accused bound over. Title 22 O.S.1971 § 264; Marks v. State, 94 Okl.Cr. 425, 237 P.2d 459 (1951); Lyon v. State, 55 Okl.Cr. 226, 28 P.2d 598

(1934). Testimony in the preliminary hearing indicated that Officer Brown had purchased 12 red capsules from Goat, which proved to be barbiturates. From the testimony, there was a reasonable inference that these capsules had been given to Goat by the defendant. Thereby, there was established reasonable cause to believe that the defendant had committed the crime set forth in the Information and we will not disturb the decision of the magistrate.

■ In defense counsel's fourth proposition, it is urged that the trial court erred in overruling defendant's pretrial Special Motion to Dismiss. Defendant asserts that the passage of time from the commission of the crime on the 29th day of June, 1972, until the filing of the Information on the 17th day of August, 1972, was unreasonable. In United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the United States Supreme Court, in ruling that a time period of three years between the commission of a crime and the filing of the indictment was not violative of due process, stated:

> "On its face, the protection of the [Sixth] Amendment is activated only when a criminal prosecution has begun and extends only to those persons who have been 'accused' in the course of that prosecution . . . . Our attention is called to nothing in the circumstances surrounding the adoption of the Amendment indicating that does not mean what it appears to say . . . ."

In the instant case, the time period that is asserted is not that which falls under the "speedy trial" provision in United States v. Marion, supra. The filing of the Information in the instant case was well within the three year statute of limitations period provided in 22 O.S.1971, § 152. In Walters v. Sam Williams, District Judge of Grady County, Okl.Cr., 474 P.2d 661 (1970), in paragraph 4 of the Syllabus, this Court stated:

> "A person can be charged by preliminary information any time prior to the running of the statute of limitations prescribed for the alleged crime."

We, therefore, find this proposition of error to be without merit.

■ Defendant argues, in his fifth proposition, that the trial court erred in refusing to strike statements made by the prosecuting attorney during closing argument and overruling motions for mistrial based on these statements. This Court, in Harvell v. State, Okl.Cr., 395 P.2d 331 (1964), stated:

> "The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration and argumentation is wide. Counsel for both the State and the defendant have a right to discuss fully from their standpoints the evidence and the inferences and deductions arising therefrom. It is only when argument by counsel for the State is grossly improper and unwarranted upon some point which may have affected defendant's rights that a reversal can be based on improper argument."

We have carefully examined the closing arguments of both parties and feel that all but one of the statements made by the prosecuting attorney were valid inferences from the evidence. We are of the opinion that the call for the jury "to answer the public's cry" by the prosecuting attorney was improper and immaterial to the issues before the jury. Although we feel that such argument was improper, such defect was cured by the trial court's admonition to the jury that their duty was "to try this defendant on this evidence and not respond to anything else that the public may be asking for." Songer v. State, Okl.Cr., 464 P.2d 763 (1969). Furthermore, it does not appear that the jury was prejudiced by these remarks in that the statute provides for a sentence of not less than two (2) years nor more than ten (10) years imprisonment and a fine of not more than Five Thousand Dollars ($5,000.00), and in the instant case the jury imposed punishment of three (3) years imprisonment and no fine.

In defendant's sixth proposition, it is submitted that the trial court erred in ruling that State's Exhibit # 2 fell within the legal definition set forth in Schedule III pursuant to 63 O.S.1973 Supp., § 2-208(A)(1) of the Controlled Dangerous Substance Act. State's Exhibit # 2 (Chemical Analysis Report) stated that the evidence contained "barbiturate" instead of employing the language found in the statute that the evidence contained "a derivative of barbituric acid, or any salt of a derivative of barbituric acid." Webster's Third New International Dictionary (1963) and Webster's New Collegiate Dictionary (1973) define barbiturate as a "salt or ester of barbituric acid." In Mallory, Medical Dictionary for Lawyers, (2nd Ed. 1951), barbiturate is defined as a "salt of barbituric acid." In Jefferson v. State, 34 Okl.Cr. 56, 244 P. 460 (1926), this Court, in quoting from Barr v. State, 28 Okl.Cr. 392, 231 P. 322 (1924), stated:

"'Judicial notice will be taken of scientific facts which are universally known, or which may be found in the standard dictionaries. . . .'"

We, therefore, find this proposition to be without merit.

In defense counsel's seventh proposition, it is submitted that the trial court erred in ruling that the defendant could not argue the Oklahoma Statutes concerning eligibility for suspended sentences, deferred sentences and parole. This Court has held that the province of the jury is the determination of fact involving the guilt or innocence of the accused. Disheroon v. State, Okl.Cr., 357 P. 2d 236 (1960). This Court has further held that it is improper and error for the trial court to instruct the jury as to the possible reduction of the sentence imposed by pardon and parole or deductions for good behavior. Cox v. State, Okl.Cr., 491 P.2d 357 (1971). Also, this Court has held that it is improper for the prosecuting attorney to put these matters before the jury in his final argument. Tucker v. State, Okl.Cr., 499 P.2d 458 (1972). Although this Court has never before spoken to the situation now presented, the situation of defense counsel arguing that there can be no reduction in sentence is analogous to the above circumstances in that such argument is outside the province of the jury. We, therefore, find that to allow defense counsel to argue eligibility for suspended sentences, deferred sentences and parole would be improper and we find this proposition to be without merit.

It is defendant's last proposition that the trial court erred in refusing to consider the defendant's application for suspended sentence. Title 63 O.S.1971, § 2-401B(2) provides for the punishment upon conviction for the crime in the instant case of Unlawful Distribution of Controlled Substance, and further provides that:

"Such sentence shall not be subject to statutory provisions for suspended sentences, deferred sentences or probation."

We have previously examined this statute and upheld its constitutionality. Black v. State, Okl.Cr., 509 P.2d 941 (1973); Disheroon v. State, Okl.Cr., 514 P.2d 685 (1973). In light of *Black*, supra, and *Disheroon*, supra, we find this proposition to be without merit.

Having reviewed all the contentions of defendant, and finding them to be without merit, we conclude that the judgment and sentence appealed from must be, and the same is hereby, affirmed.

BLISS, P. J., concurs.

BRETT, J., specially concurs.

BRETT, Judge (special concurrence).

I concur that this conviction should be affirmed, but I reserve my position with reference to the trial court's inherent authority to suspend, or defer, a judicially imposed sentence, as stated in my dissent to Black v. State, supra.