620 A.2d 295

**Andrew Nathaniel WILLS**

v.

**STATE of Maryland.**

**No. 93, Sept. Term, 1992.**

Court of Appeals of Maryland.

March 5, 1993.

372

George E. Burns, Jr., Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Sarah E. Page, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI, ROBERT M. BELL and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired, Specially Assigned), JJ.

CHARLES E. ORTH, Jr. Judge, Specially Assigned.

## I

The administration of justice in Maryland recognizes three standards of proof to test the sufficiency of the

evidence. The lowest standard requires proof by a "preponderance" of the evidence; the highest standard demands proof "beyond a reasonable doubt;" an intermediate standard calls for proof that is "clear and convincing." [1]

We expect the trier of the facts to distinguish the subtle distinctions and nuances of a standard when called upon to apply it. But the terms "preponderance," "clear and convincing" and "reasonable doubt" are not, at least in their legal sense, street familiar. Therefore, when the trier of facts is a jury, some authoritative explanation of the applicable term is advisable. To that end we adopted what is now Md.Rule 4–325. Section (c) of the rule reads:

The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding.... The court need

---

1. On the burden of proving by a preponderance of the evidence, we have said,

In any case, civil or criminal, to meet the test of legal sufficiency, evidence (if believed) must either show directly, or support a rational inference of, the fact to be proved. In a civil case, the fact must be shown, or the inference supported, by a preponderance of probability or an opposite preponderance must be overcome.

*Edwards v. State,* 198 Md. 132, 157–158, 83 A.2d 578 (1951). We have also affirmed a trial court's apparent finding under the preponderance standard "that the scales tipped in the direction" of the prevailing parties below. *Knowles v. Binford,* 268 Md. 2, 11–12, 298 A.2d 862 (1973). When the scales are "in a state of even balance," the party with the burden of proving its case by a preponderance of the evidence loses. *Potts v. Armour & Co.,* 183 Md. 483, 490, 39 A.2d 552 (1944). *See Maryland Civil Pattern Jury Instructions,* § 1:8a. (1984) (MPJI).

As for clear and convincing evidence, in *Berkey v. Delia,* 287 Md. 302, 319–320, 413 A.2d 170 (1980), we adopted the definition set out in *Whittington v. State,* 8 Md.App. 676, 679, n. 3, 262 A.2d 75 (1970): "more than preponderance of the evidence and less than evidence beyond a reasonable doubt...."

To be clear and convincing, evidence should be "clear" in the sense that it is certain, plain to the understanding, and unambiguous and "convincing" in the sense that it is so reasonable and persuasive as to cause [one] to believe it.

MPJI § 1:8b.

We address the reasonable doubt standard later in this opinion.

For a discussion on the differing burdens of persuasion, see Lynn McLain, *Maryland Evidence,* § 300.4 (1987) (1992 Pocket Part).

not grant a requested instruction if the matter is fairly covered by instructions actually given.

Thus the rule is generally permissive. It becomes mandatory, however, when an instruction on the applicable law is requested by a party. But the mandatory aspect has a proviso—the requested instruction need not be given if the matter has been fairly covered. We are called upon on this appeal to examine the reasonable doubt standard through the eyes of the rule.[2]

## II

### A

We have been taught by the Supreme Court of the United States that the reasonable doubt standard is constitutionally mandated by the due process clause of the Fourteenth Amendment to the Constitution of the United States, and is an indispensable component of every criminal proceeding. *In re Winship*, 397 U.S. 358, 361–364, 90 S.Ct. 1068, 1071–1073, 25 L.Ed.2d 368 (1970). The reasonable doubt standard is firmly fixed today in our system of criminal justice. We declared in *Lambert v. State*, 193 Md. 551, 558, 69 A.2d 461 (1949):

It is a fundamental rule that the jury in a criminal case, before finding a verdict of guilty, must be satisfied of the guilt of the accused beyond a reasonable doubt.

So the test for the sufficiency of the evidence in a criminal cause is

---

**2.** Probably because of its high standing in the echelon of standards of proof, the reasonable doubt standard is generally considered as being adopted for the benefit of the accused. There is the suggestion, however, that the standard "was actually a prosecutorial innovation that had the effect of *decreasing* the burden of proof in criminal cases." Anthony A. Morano, *A Reexamination of the Development of the Reasonable Doubt Rule*, 55 Boston University Law Review, 507 at 508 (1975) (emphasis in original). Professor Morano pointed out:

Prior to the rule's adoption, juries were expected to acquit if they had *any* doubts—reasonable or unreasonable—of the accused's guilt.

*Id.* (emphasis in original, footnote omitted).

whether the evidence either shows directly or supports a rational inference of the facts to be proved, from which the trier of fact could be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged.

*See Wilson v. State,* 261 Md 551, 564, 276 A.2d 214 (1971); *Royal v. State,* 236 Md. 443, 448–449, 204 A.2d 500 (1964). We have declared that because the standard is constitutionally mandated, it is within the ambit of Rule 4–325. *See Williams v. State,* 322 Md. 35, 42, 585 A.2d 209 (1991); *Lansdowne v. State,* 287 Md. 232, 239, 412 A.2d 88 (1980). Therefore, "a trial judge in a criminal case must give an instruction correctly explaining 'reasonable doubt' if requested by the accused," *Lansdowne* at 243, 412 A.2d 88.

Its inclusion in the court's charge is so indispensable that the Supreme Court has indicated that failure to instruct the jury of the requirement of the reasonable doubt standard is never harmless error. *Jackson v. Virginia,* 443 U.S. 307, 320, n. 14, 99 S.Ct. 2781 [2790 n. 14], 61 L.Ed.2d 560, *reh. denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979).

*Montgomery v. State,* 292 Md. 84, 93, 437 A.2d 654 (1981). *See Williams,* 322 Md. at 42, 585 A.2d 209.

The difficulty with the reasonable doubt standard is its nebulous nature. *See* Charles E. Torcia, *Wharton's Criminal Evidence,* § 14 (14th ed. 1985). Courts, legislatures, scholars, legal literati, and authors of academic literature have wrestled with the problem of defining the standard. None of them has been able to come up with a definition that is generally acceptable. "[S]ome of the courts

have expressed the opinion that the English language is not adequate to give a specific definition of "reasonable doubt" that would simplify its meaning, for the rule requiring that the jury must be satisfied beyond a reasonable doubt is generally as simple and intelligible as a guide for the jury as any rule that could be formulated.

*Lambert,* 193 Md. at 559, 69 A.2d 461. "In fact," the Court continued,

it is recognized that the rule is quite frequently made obscure by attempts at definition, which serve to create doubts instead of removing them. This danger of confusing the minds of the jurors in attempting to define "reasonable doubt" has prompted some of the trial judges to refuse to attempt to give any definition.

*Id.* We opined, however, in *Lansdowne,* 287 Md. at 242, 412 A.2d 88:

In our view, the term "reasonable doubt" is not so commonplace, simple, and clear that its meaning is self-evident to a jury. Even judges, who have "professional expertise" and "experience," and who, by their "legal training, traditional approach to problems, and the very state of the art of [their] profession ... learn to perceive, distinguish and interpret the nuances of the law which are its 'warp and woof,' " *State v. Hutchinson,* 260 Md. 227, 233, 271 A.2d 641, 644 (1970), have difficulty construing the meaning of "reasonable doubt." Indeed, in myriads of cases, trial judges have committed error by incorrectly explaining "reasonable doubt." Some unskilled and untutored lay jurors are at least as likely as some judges to misconstrue the meaning of "reasonable doubt."

(Footnote omitted). "Consequently," we concluded, "a correct explanation may well serve the useful function of enlightening rather than confusing a jury." *Id.*[3] But we have made clear that

there is not just one "satisfactory explanation of reasonable doubt and we decline to prescribe an instruction that will apply in every case."

*Poole v. State,* 295 Md. 167, 186, 453 A.2d 1218 (1983), quoting *Montgomery,* 292 Md. at 95, 437 A.2d 654.

---

**3.** For a discussion of the difference between a "definition" and an "explanation" *see Lambert v. State,* 193 Md. 551, 559–560, 69 A.2d 461 (1949).

B

Our predecessors have struggled to express a suitable explanation of the reasonable doubt standard. In *Lambert*, 193 Md. at 560–561, 69 A.2d 461, the Court held:

[I]t is not erroneous to instruct the jury that evidence is sufficient to remove a reasonable doubt when it convinces the judgment of an ordinarily prudent man of the truth of a proposition with such force that he would act upon that conviction without hesitation in his own most important affairs.

*Lansdowne*, 287 Md. at 241–242, 412 A.2d 88, affirmed that an instruction similar to that given in *Lambert* "was a correct statement of the law which did not constitute error." The Court explained, "It did not confuse the jury and was not prejudicial to the accused." *Id.* at 242, 412 A.2d 88.

*Montgomery*, 292 Md. at 95, 437 A.2d 654, reaffirmed the sufficiency of the *Lambert* instruction. It observed, however, that

in our opinion instructing a jury [as the judge did in that case] that reasonable doubt is a doubt which is founded upon reason without focusing their attention on the grave importance of their decision based on the evidence and their commitment to be bound by the result is a circular attempt at explanation which does nothing more than define the term by using the term.

*Id.* Such an explanation was not a proper instruction. *Id.*

In *Poole*, 295 Md. 167, 453 A.2d 1218, the Court commented on the trial court's instruction even though the point was not preserved for appeal. The Court noted:

In defining reasonable doubt, the [trial] court stated, in pertinent part, "It is such a doubt that would cause a reasonable person to *hesitate* to act in the graver or more important transactions of life." (Emphasis supplied).

*Id.* at 186 n. 4, 453 A.2d 1218. The Court said:

[Poole] seems to argue that the concept of the "without hesitation" requirement, as explicated in *Lansdowne v. State*, 287 Md. 232, 241, 412 A.2d 88, 92–93 (1980), and

*Montgomery v. State,* 292 Md. 84, 95, 437 A.2d 654, 659 (1981), was left out of the instructions here.

*Id.* at 186, 453 A.2d 1218. "However," the Court found it clear from its review of the records "that the factor of hesitation was given by the trial judge." *Id.* "Moreover," the Court observed, "as the State has aptly pointed out," this Court recently held that there is not just one "satisfactory explanation of reasonable doubt and we decline to prescribe an instruction that will apply in every case." 295 Md. at 186, 453 A.2d 1218, quoting *Montgomery,* 292 Md. at 95, 437 A.2d 654.

In *Bowers v. State,* 298 Md. 115, 468 A.2d 101 (1983), the trial court defined reasonable doubt as

> "such doubt as would cause a reasonable person to hesitate to act in the graver or more important transactions of his life."

*Id.* at 157, 468 A.2d 101. The trial court continued:

> "Thus, if the evidence is of a character as to persuade you of the truth of the charges against the Defendant, with the same force that would be sufficient to persuade you to act in the more important transactions in your life then you would conclude the State has proven aggravating circumstances beyond a reasonable doubt.

> "If, on the other hand, you could not act based on that evidence in the more important transactions in your life, then you would conclude that the State had not met the burden of proof and therefore had not proven the aggravating circumstances."

*Id.* Defense counsel objected:

> Your Honor, you said that if they find evidence sufficient to act in the more important, on which they would act in the more important transactions of their life to find the Defendant guilty, I would ask you to insert the words "without hesitation and if they were to find evidence sufficient to act without hesitation in the more important transactions."

*Id.* The judge thought that he had previously covered that when he said to the jury "if your doubt is such as would cause you to hesitate in the more important transactions in your life then you would conclude that the burden of proof had not been met." *Id.* Defense counsel acknowledged that the judge had indeed said that, "but," counsel claimed

I think the way I am asking you to say it is different and it conveys a different thought.

*Id.* The judge replied, "You argue the hesitation point, but I think I have covered it in the instruction." *Id.* On appeal Bowers claimed that the instruction "conveys not the reasonable doubt standard but rather the 'preponderance of evidence' standard." *Id.* at 158, 468 A.2d 101. This Court referred to *Lambert* in which the phrase "act without hesitation" was used, and to *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed 150 (1954) in which the jury instruction used the words "would be willing to act." 298 Md. at 158, 468 A.2d 101. We quoted the Supreme Court:

"We think this section of the charge should have been in terms of the kind of doubt that would make a person hesitate to act, ... rather than the kind on which he would be willing to act.... 348 U.S. at 140 [75 S.Ct. at 138]...."

298 Md. at 159, 468 A.2d 101. We pointed out, however, that the Supreme Court explained,

"we believe the instruction as given was not of the type that could mislead the jury into finding no reasonable doubt when in fact there was some. A definition of the doubt as something the jury would act upon would seem to create confusion rather than misapprehension. 'Attempts to explain the term "reasonable doubt" do not usually result in making it any clearer to the minds of the jury,' *Miles v. United States*, 103 U.S. 304, 312, [26 L.Ed. 481 (1881),] and we feel that, taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury. 348 U.S. at 140 [75 S.Ct. at 138]...."

298 Md. at 159, 468 A.2d 101. We noted that legions of our cases have held that when

an objection is raised to a court's instruction, attention should not be focused on a particular portion lifted out of context, but rather on the jury instruction as a whole.

*Id.* The Court "perceived no error in the instruction here as a whole." *Id.*

In *Collins v. State,* 318 Md. 269, 568 A.2d 1, *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3296, 111 L.Ed.2d 805 (1990), the trial judge, as part of his instruction on reasonable doubt said:

All that is necessary is that the State prove guilt beyond a reasonable doubt, beyond a doubt based on reason. In other words, you must be reasonably certain of the guilt of the accused in order to convict. You can have some doubt and still have the finding of guilt. The proof necessary is that which you would act upon in important matters involving important affairs in your own personal lives or businesses.

*Id.* at 283, 568 A.2d 1. Defense counsel objected to the instruction. The court then reinstructed the jury:

Also in the burden of proof that the State must meet ... is proof beyond a reasonable doubt and to a moral certainty. You must be satisfied to that extent as to each element of the various charges.

Before us, Collins' attorney maintained that the phrase "reasonably certain" was misleading and significantly lowered the burden of proof. Allegedly, it conveyed "a confusing message as to a vital component of every criminal trial." *Id.*

This Court referred to *Poole, Lambert, Lansdowne and Montgomery.* The Court indicated that the instruction considered in its entirety was not erroneous:

In reviewing the instructions given as a whole in the instant case, including the reinstruction, we find that the trial judge repeatedly and properly focused on the term "reasonable doubt" as the appropriate standard of proof required. The court's reinstruction emphasized that the

State must prove each and every element of the case beyond a reasonable doubt.

*Id.* at 284, 568 A.2d 1. But, it made no express rule as to the propriety of the instruction. It observed:

Counsel's failure to except to the reinstruction is indicative of an acceptance and approval of the amended form used. Under these circumstances, defense counsel has failed to preserve the challenge to the court's instructions on reasonable doubt.

*Id.* at 284–285, 568 A.2d 1.

*Williams*, 322 Md. 35, 585 A.2d 209, was primarily concerned with presumption of innocence. We held that the refusal of the trial judge to give an instruction on that principle when requested was erroneous under Rule 4–325(c) and that, in the circumstances, the error was not harmless. We coupled an instruction on the presumption of innocence, however, with an instruction on reasonable doubt. We recalled that we said in *Montgomery*, 292 Md. at 95, 437 A.2d 654, that reasonable doubt cannot be defined by itself and must be explained to the jury in a manner indicating the degree of gravity with which the decision making process should be endowed. 322 Md. at 44, 585 A.2d 209. We observed in *Williams, id.,* that

the close alliance between the reasonable doubt principle and the presumption of innocence principle clearly indicates that the latter would aid in explaining the former.

Our opinions reflect an appreciation that the reasonable doubt standard is difficult to explain. But when the opinions are stirred together and alembicated, the essence of the standard is left and some guidelines emerge. We extract the guidelines.

Our opinions have refrained from adopting a boiler plate explanation of reasonable doubt, but when an explanation is given to the jury, whether at the instance of the judge or at the request of a party, it must be such as does not tend to confuse, mislead or prejudice the accused. It is better that the explanation begin with a statement of

the principle of presumption of innocence which places the burden of proof on the State, where it remains throughout the trial. The State is not required to prove guilt beyond all possible doubt or to a mathematical certainty, but it is not enough if the evidence shows that the defendant is *proba-bly* guilty. Nor is it sufficient that reasonable doubt is defined only by its own terms. The explanation should focus on the term "reasonable doubt," so as to bring home to the jury clearly that the corpus delicti of the crime and the criminal agency of the accused must be proved *beyond* a reasonable doubt.

■ As we have seen, for almost half a century, we have maintained that an instruction which contained the phrase "without hesitation" was not erroneous. It seems, however, that in practical application at a trial, the words "without hesitation" or "hesitate to act" may tend to confuse the jury more than afford them an understandable explanation of the true reasonable doubt standard. The fourteen members of the Committee which fashioned the Maryland Pattern Jury Instructions—Criminal 1991 (MPJI–CR) consisted of judges at the trial and appellate level, prosecutors and former prosecutors, defense attorneys, law professors and other distinguished members of the Maryland bar. The instruction on reasonable doubt which the Committee endorsed, MPJI–CR 2:02, begins with a suggested instruction on presumption of innocence. Then, after pointing out that "the State is not required to prove guilt beyond all possible doubt or to a mathematical certainty," it states:

A reasonable doubt is a doubt founded upon reason. It is not a fanciful doubt, a whimsical doubt or a capricious doubt. Proof beyond a reasonable doubt requires such proof as would convince you of the truth of a fact to the extent that you would be willing to act upon such belief *without reservation* in an important matter in your own business or personal affairs. However, if you are not satisfied of the defendant's guilt to that extent, then

reasonable doubt exists and the defendant must be found not guilty.

(Emphasis added). The Committee made this comment:

> This instruction replaces the traditional "without hesitation" phrase with the phrase "without reservation" so that the jury will not confuse the degree of certainty needed with an immediacy of acting upon that certainty.

We are content to accept the wisdom of such learned and experienced men and women, active in the arena, sitting on the bench and on opposite sides of the trial table, that the inclusion of "without hesitation" or "hesitate to act" in the reasonable doubt standard may tend to confuse the jury and that justice is better served by substituting the phrase "without reservation" for the "hesitant" verbiage. We can visualize, as the Committee apparently did, that the jury, given the "hesitate" phrase in the instruction, may well think that if they did not find the evidence sufficient to support a verdict of guilty "immediately" and if they did not reach a conviction without some debate, a reasonable doubt must exist because they "hesitated to act" or did not act "without hesitation." We do not say, in the face of our prior opinions, that an instruction including the words "without hesitation" or "hesitate to act" is erroneous per se. We are of the strong belief, however, that "without reservation," as the pattern instruction suggests, is the much better term.

 On appeal the appellate court considers an explanation of reasonable doubt as a whole; it does not determine the propriety of an explanation from an isolated statement. It views the effect of a suspect statement on the jury in the light of the entire explanation. If an explanation with respect to reasonable doubt is not given when duly requested, and the matter is not fairly covered by instructions actually given, the refusal is never harmless and compels reversal. But if the instruction is actually given but is in some way erroneous, the appellate court

must determine whether the error is so prejudicial as to call for reversal or may be excused as harmless.

## III

### A

Andrew Nathaniel Wills was convicted by a jury in the Circuit Court for Charles County of distributing and conspiring to distribute cocaine. He appealed from the judgments entered on the convictions. One of the claims he made in the intermediate appellate court was that the trial court erroneously instructed the jury on reasonable doubt. The Court of Special Appeals was convinced on "a thorough reading of the instruction" that "the instruction given was not erroneous." It affirmed the judgments in an unreported opinion. The case is before us by way of certiorari. The only question presented to us is the propriety of the trial court's instruction on the reasonable doubt standard.

### B

We set out the instruction exactly as the judge delivered it to the jury. After stating the presumption of innocence principle, the court said:

The State has to prove that he is guilty beyond a reasonable doubt. Okay.

Beyond a reasonable doubt means just that, beyond a reasonable doubt. I always say, okay, let's close our eyes and let's visualize those words, beyond a reasonable doubt. Those are the words used. Okay. It is important to know that the people who made the laws, the framers of the Constitution, didn't say beyond all doubt. They could have said that, but they didn't say that, beyond a shadow of a doubt, to a mathematical certainty. They used the words, beyond a reasonable doubt, so the State's burden in a criminal case, and in this criminal case, in particular, is to prove that Mr. Wills committed one or both of these crimes beyond a reasonable doubt. A reasonable doubt is the type of doubt that would cause

you to hesitate and not act in an important decision in your own life.

Okay. The law is going to be clear, once I explain the law to you, it is going to be pretty clear. Okay. There is not going to be any dispute, I don't think, in your minds this is the law. You have got to determine in your deliberations what the facts are and then plug that into the law. When you do that you have to be persuaded beyond a reasonable doubt those facts would be of the same nature and quality that you would rely on in making an important decision in your own life. Now, picture making one of those decisions. Picture when you got married or bought a new home or changed jobs or decided to have an operation, decided to get divorced, it might be anything, a decision that has a major impact on your life. I doubt that any of you have made one of those decisions without having some question as to whether or not this is the right thing to do. When you make a major decision, you generally have a nagging doubt, but if you weigh all of the factors, if you weigh the things that say, I should do it, and the things that say, I shouldn't do it, and you decide to go forward, then you don't have a reasonable doubt. The State's burden in this case is to persuade you to that same extent that you would rely on in making an important decision in your own life, that the defendant is guilty of one or both of these charges pending against him.

Defense counsel objected to the instruction:

[Y]ou gave an example in the reasonable doubt instruction, that if you had a nagging doubt, but made the decision anyway, such as the decision to get divorced, the decision to get married, etc., that that is what you have to do in this case, then you have no reasonable doubt, but, judge, I believe that is completely misleading because that kind of nagging doubt could, in fact, be a reasonable doubt, and in a criminal case, unlike any divorce, marriage or having an operation, if you have a nagging doubt, like that, that is based on reason and common sense, that is what reasonable doubt is all about. So I

don't believe that your analogy to the important decision of life was as it should have been.

He commended the court for "using those examples because I think those are the kinds of examples that ought to be used in terms of their gravity...." Defense counsel thought, however that "the way the court used them was wrong...." He asked the court "to reinstruct on reasonable doubt to clarify that." The court refused to do so.

 We focus first on the judge's assertion that in making an important decision, "if you weigh all of the factors, if you weigh the things that say, I should do it, and the things that say, I shouldn't do it, and you decide to go forward, then you don't have a reasonable doubt." This explanation is confusing and misleading because it leans towards the preponderance standard rather than the reasonable doubt standard. *See* note 1 *supra.* It plants the possibility in the minds of the jury that if the weighing process is evenly balanced they may convict. Moreover, it does not contest a notion, which the jury could well entertain from what was said, that when all the evidence is weighed, if the evidence adduced by the State has more convincing force and produces in the minds of the jury a belief that it is more likely true than not, the reasonable doubt standard has been met. That may meet the preponderance standard, but it clearly does not comport with the reasonable doubt standard even when considered in the light of the entire instruction. When the confusing explanation is viewed with the statement:

A reasonable doubt is the type of doubt that would cause you to hesitate and not act in an important decision in your own life,

and with the observation:

I doubt whether any of you have made [an important decision in your life] without having some question as to whether or not this is the right thing to do,

and with the averment:

when you make a major decision, you generally have a nagging doubt, ...

388

it is obvious that the instruction as a whole did not measure up to an acceptable explanation of the reasonable doubt standard. We do not believe that a "nagging doubt" is the equivalent of acting "without reservation" (the better phrase) or even with the "hesitation" phrases accepted in the past. We hold that the explanation of reasonable doubt given by the judge in this case was erroneous.

The fate of Wills turned on whom the jury believed. The State adduced evidence tending to show that an undercover officer asked Wills whether Wills could procure three bags of crack for the officer. Wills said he could, walked over to another man and was given three bags of what proved to be crack. Wills disputed this account. He testified that he was framed and that the police account was a fabrication. A longtime acquaintance and distant relative of Wills testified that he had been told by a nark that the police were out to get Wills for selling drugs.

In the circumstances, we cannot say, without reservation, that the erroneous instruction did not contribute to the jury's guilty verdicts. Therefore, under the test we adopted in *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665 (1976), the error was not harmless. Wills is entitled to a new trial.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED;

CASE REMANDED TO THAT COURT WITH DIRECTION TO REMAND TO THE CIRCUIT COURT FOR CHARLES COUNTY WITH DIRECTION TO VACATE THE JUDGMENTS ENTERED AND GRANT A NEW TRIAL;

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY CHARLES COUNTY.

McAULIFFE, Judge, concurring.

I join in the Court's opinion. I write separately to express my strongly held view that trial judges should in-

struct on the issue of reasonable doubt in the form suggested by Maryland Criminal Pattern Jury Instruction 2:02, and resist the temptation to stray from, or embellish upon, that instruction.

I am not particularly fond of including in a reasonable doubt instruction reference to important decisions the jurors may be called upon to make in their business or personal affairs, because of the significant potential for misunderstanding inherent in this reference if the concept is not stated with precision. This Court and the Court of Special Appeals are seeing increasing numbers of challenges to reasonable doubt instructions, largely because attempts to embellish upon the suggested instruction often suggest to the jurors that if they make a decision concerning important affairs in their life or business, the evidence upon which they act necessarily constitutes proof beyond a reasonable doubt. That is wrong. Important decisions in one's life are often, and of necessity, made on a mere preponderance of evidence.

In *Monk v. Zelez*, 901 F.2d 885, 889–92 (10th Cir.1990), the United States Court of Appeals for the Tenth Circuit found constitutionally defective[1] that portion of a reasonable doubt instruction which stated:

If you have an abiding conviction of [the defendant's] guilt such as you would be willing to act upon in the more weighty and important matters relating to your own affairs, then you have no reasonable doubt.

The court said:

The "willingness to act" language identified by Monk has also been repeatedly criticized by this court and others. *See, e.g., United States v. Leaphart,* 513 F.2d 747, 750 (10th Cir.1975); *United States v. Baptiste,* 608 F.2d 666, 668 (5th Cir.1979), *cert. denied,* 450 U.S. 1000, 101 S.Ct. 1707, 68 L.Ed.2d 202 (1981); *United States v.*

---

**1.** The court also found defective a separate portion of the instruction that equated reasonable doubt with a "substantial doubt." 901 F.2d at 889–90.

*Robinson,* 546 F.2d 309, 313 (9th Cir.1976), *cert. denied,* 430 U.S. 918, 97 S.Ct. 1333, 51 L.Ed.2d 597 (1977). As the D.C. Circuit has noted, "there is a substantial difference between a juror's verdict of guilt beyond a reasonable doubt and a person making a judgment in a matter of personal importance to him." *Scurry v. United States,* 347 F.2d 468, 470 (D.C.Cir.1965), *cert. denied,* 389 U.S. 883, 88 S.Ct. 139, 19 L.Ed.2d 179 (1967).

*Id.* at 890.

The Committee on Model Jury Instructions for the Ninth Circuit deleted from its instruction on reasonable doubt reference to "important decisions" in the lives of jurors. The Committee explained:

> The former model instruction instructed the jury to find the defendant guilty only if "you find the evidence so convincing that an ordinary person would be willing to make the most important decisions in his or her own life on the basis of such evidence." The Committee has rejected this analogy because the most important decisions in life—choosing a spouse, buying a house, borrowing money, and the like—may involve a heavy element of uncertainty and risk-taking and are wholly unlike the decisions jurors ought to make in criminal cases.

9th Cir.Crim.Jury Inst. 3.03 comment (1992).

More than a century ago, the United States Supreme Court said that "[a]ttempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." *Miles v. United States,* 103 U.S. 304, 312, 26 L.Ed. 481 (1880). More recently, see *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954).

In *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), the Supreme Court reversed a conviction because the trial judge equated reasonable doubt to an "actual substantial doubt" or a "grave uncertainty." The Court said:

It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with the reference to "moral certainty," rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

498 U.S. at 41, 111 S.Ct. at 329–30. In a footnote to the above passage, the Court noted that:

Similar attempts to define reasonable doubt have been widely criticized by the Federal Courts of Appeals. See, e.g., *Monk v. Zelez*, 901 F.2d 885, 889–890 (CA10 1990); *United States v. Moss*, 756 F.2d 329, 333 (CA4 1985); *United States v. Indorato*, 628 F.2d 711, 720–721 (CA1 1980); *United States v. Byrd*, 352 F.2d 570, 575 (CA2 1965); see also *Taylor v. Kentucky*, 436 U.S. 478, 488, 98 S.Ct. 1930, 1936, 56 L.Ed.2d 468 (1978).

498 U.S. at 41, 111 S.Ct. at 330. Recently, the Supreme Court granted certiorari in another Louisiana case to determine whether a constitutionally faulty definition of reasonable doubt can ever be harmless. *State v. Sullivan*, 596 So.2d 177 (La.), *cert. granted*, —— U.S. ——, 113 S.Ct. 373, —— L.Ed.2d —— (1992).

Maryland Criminal Pattern Jury Instruction 2:02 makes it clear that only such proof "as would convince you of the truth of a fact to the extent that you would be willing to act upon such belief *without reservation* in an important matter in your own business or personal affairs" is analogous to proof beyond a reasonable doubt (emphasis added). I would adopt here the approach taken by the Court in *Kelly v. State*, 270 Md. 139, 144, 310 A.2d 538 (1973), dealing with the giving of a modified *Allen* [*v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) ] charge, and instruct trial judges that they should "closely adhere" to the approved instruction and that any departure from that language will be "subjected to careful scrutiny."

**392**

Judge ELDRIDGE has authorized me to state that he joins in the views stated herein.