**Gene Thomas MEYER**

v.

**Richard A. LANHAM, Sr. and J. Joseph Curran**

No. CIV. S 98–1692.

United States District Court, D. Maryland.

June 3, 1998.

Fred Warren Bennett, Law Office, Greenbelt, Perry J. Becker, Lochte, Murray, Northrop, Schiff & Shelby, Bowie, MD, for Petitioner.

Regina H. Lewis, Attorney General of Maryland, Baltimore, for Respondents.

## MEMORANDUM OPINION AND ORDER

SMALKIN, District Judge.

By Memorandum Opinion and Order thereon dated March 27, 1998, this Court summarily dismissed, pursuant to Rule 4, Rules Governing Section 2254 Cases, a petition for writ of habeas corpus challenging convictions entered in the Circuit Court for Prince George's County, Maryland, on four counts of a criminal information charging solicitation to murder. The petitioner has appealed this Court's denial of the petition in Civil No. S 98–884.

Now, the petitioner has filed, by counsel, a petition for writ of habeas corpus, seeking to appeal his related convictions for first degree murder of a mother and the second degree murder of her three-month old child. Because the Court's review of the petition and the exhibits annexed thereto convince it that the petitioner is plainly entitled to no relief in this Court pursuant to 28 U.S.C. § 2254, as amended, as to certain contentions, the Court will enter an Order summarily dismissing those contentions under Rule 4, Rules Governing Section 2254 Cases. The Court will direct the respondents to answer one contention. The Court's reasons for its actions are set forth *post*.

Between the dates of the Court's decision in Civil No. S 98–884 and the filing of the present petition, the Fourth Circuit issued its comprehensive opinion in *Green v. French*, 143 F.3d 865 (4th Cir.1998), commenting authoritatively and exhaustively on the effects of the recent amendments to 28 U.S.C. § 2254(d), particularly the requirements of the amended statute that no writ of habeas corpus can issue from a federal court in a state criminal case unless the state court's adjudication of the federal claim was contrary to, or involved an unreasonable application of, clearly established federal law.

In *Green*, the Fourth Circuit gave a very narrow construction to the "contrary to" language, holding that a decision of a state court is contrary to law established by the Supreme Court if it reaches a legal conclusion or result directly opposite to that of the Supreme Court on identical facts, or where

the principle is correctly identified but applied to an indistinguishable case and reaches an opposite conclusion than that reached by the Supreme Court, or where extension of the principle is indisputably unjustified, or where the principle is not applied to a factual context to which it clearly does apply.

In *Green,* at 870, the Fourth Circuit also held that an unreasonable application of clearly established federal law is made where application of the guiding legal principle as clearly established by the Supreme Court was "objectively unreasonable". Slip op. at 11. The Fourth Circuit considered the practical application of both clauses of Section 2254(d)(1), as amended, in *Green,* at 876–77, holding that the writ should issue when "no reasonable jurist would disagree" that an established principle of federal law as reflected by a decision of the Supreme Court should either apply or not apply—as the case may be—to the facts at hand.

Applying*Green's*construction of Section 2254(d) to the present case, the Court is of the opinion, based on the reported decision of the Court of Special Appeals of Maryland, *Meyer v. State,* 43 Md.App. 427, 406 A.2d 427 (1979) and the decision of the Circuit Court for Prince George's County, Maryland, on the merits of petitioner's second Maryland post conviction petition, *Maryland v. Meyer,* CT–18621 (Dec. 18, 1996), both appended to the petition, that the petition and exhibits plainly show that the petitioner is entitled to no relief in this Court on certain claims.

■ Petitioner's first contention attacking his murder convictions involves the trial court's failure to give a supplemental alibi instruction. Under Maryland law, the petitioner's testimony that he was somewhere else at the time of the murders entitled him to an alibi instruction. *See, e.g., Pulley v. State,* 38 Md.App. 682, 382 A.2d 621 (1978). There is, though, no specific federal right recognized by the Supreme Court of the Untied States to have an alibi instruction.

In this case, trial counsel requested the court to instruct the jury that "the State had the burden to disprove alibi". In point of fact, no such instruction was given, despite the fact that the trial judge agreed to do so. The state post conviction court held that any

such omission was harmless, in that the trial court specifically advised the jury that it had the duty to find, before convicting the defendant, that all of the elements of the offenses had been proved beyond a reasonable doubt. Obviously, the element of criminal agency is one of the essential elements of proof for first and second degree murder, and, as the PCPA court noted in its opinion at 9, it was the key issue on which this entire case focused. Thus, as a due process matter, failure to give the requested "belt and suspenders" instruction on alibi did not so taint the proceedings as to warrant federal habeas corpus relief. In no significant way did the omission of the requested supplemental instruction diminish the state's burden of proving the defendant guilty beyond a reasonable doubt. *Cf. Fulton v. Warden,* 744 F.2d 1026 (4th Cir.1984), *cert. denied,* 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 655 (1985). It is interesting to note, that, in *Fulton* itself, there was a finding of harmless error in the giving of a jury instruction that *was* clearly unconstitutional (as it put the burden of proving alibi on the defendant, essentially relieving the State of proving criminal agency beyond a reasonable doubt). In this case, nothing even close to that level of burden-shifting occurred, much less did the trial court's failure to give the instruction taint the trial with fundamental unfairness.

■ Petitioner next contends that trial counsel was ineffective in failing properly to object to the trial court's failure to give the supplemental alibi instruction. The PCPA court held, at 9, that counsel acted within the range of reasonable professional competence in deciding not to press the issue further, and it also held, *id.,* that there was no prejudice, in the sense that the result of the proceeding would not have been any different had the issue been pressed. This analysis by the PCPA court is neither contrary to, nor does it involve an unreasonable application of, clearly established federal law. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Petitioner next contends that appellate counsel was ineffective in failing to raise the same issue on appeal. For the reasons pre-

viously stated, there was no prejudice to the petitioner, and the findings of the PCPA court on this issue, both as to the lack of prejudice and the determination by appellate counsel not to press the supplemental alibi instruction issue, are neither contrary to, nor did they involve an unreasonable application of, clearly-established federal law. *Strickland v. Washington, supra.*

Petitioner also contends that his trial and appellate counsel were ineffective in failing to cure, at trial, and to raise, on direct appeal, petitioner's allegation of error in connection with his absence from bench conferences.

■ Despite the manifold citation of Maryland precedent by the petitioner, there is no clearly established federal right to be present at bench conferences. Indeed, the right to presence in a federal criminal trial under Fed.R.Crim.P. 43 is much broader than the constitutional right to personal presence. *See, e.g., United States v. Camacho,* 955 F.2d 950 (4th Cir.1992). In the present case, the petitioner was physically present in the courtroom but did not actively participate in bench conferences during *voir dire* and trial. Even if the petitioner had such a right under Maryland law, no federal claim is raised by his absence from those conferences.

■ Furthermore, even if the petitioner had a federal constitutional right to be present, under 28 U.S.C. § 2254(e)(1), as amended, the state post-conviction court's findings of fact are presumed to be correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. From the face of the petition, and the from PCPA opinion, it is clear that the PCPA court found that trial counsel had in fact informed the petitioner of his right under state law to be present at bench conferences and that the petitioner had waived such right. The state court's factual finding was based on its acceptance of trial counsel's testimony. Although, in his petition, petitioner points out that his testimony was contrary to that of his attorney on this point, and the attorney's recollection had, perhaps, been dimmed by the 18 years between trial and the post-conviction hearing (a lapse of time which can hardly be held against trial

counsel or the respondent), the petitioner does not identify any "clear and convincing" evidence that would allow this Court to disregard the state court's finding on the issue of waiver. Furthermore, the state court's application of clearly established federal law regarding waiver of a fundamental right (assuming that presence at bench conferences is such a right in the first place) was not contrary to, nor did it involve unreasonable application of, clearly established federal law. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

■ Petitioner contends that the reasonable doubt instruction given at the his trial was constitutionally deficient. The PCPA court found that the trial court's instruction comported with *current* Maryland law defining reasonable doubt, *viz., Wills v. State,* 329 Md. 370, 382–83, 620 A.2d 295 (1993). The trial court in this case gave a federally-flawless instruction as well. Despite petitioner's argument in his memorandum, the implicit finding of the state postconviction court that the instruction on reasonable doubt comported with federal constitutional standards was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law. *See, e.g., Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). Indeed, to the extent that *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) condemns, as constitutionally deficient, a reasonable doubt instruction, it does so based on the use of expressions such as "grave uncertainties," the likes of which were not used in the present case, where the trial court simply said that reasonable doubt does not equate with all doubt. It is undoubtedly true, and not confusing, vague, or burden-shifting to any extent, to tell jurors that the reasonable doubt standard does not equate to a standard of proof beyond all possible doubt. End of discussion.

■ Petitioner attacks his punishment, claiming that he was subjected to an *ex post facto* increase in his punishment when he was transferred from the Patuxent Institution to the Maryland Division of Correction, which

has, in turn, adversely impacted upon his parole eligibility.

■ Although it is true—that, had the petitioner remained at the Patuxent Institution and *successfully* completed its program, the *ex post facto* clause would guaranty that his parole would not be subject to gubernatorial approval, *if* parole was granted by the Patuxent Board. *Gluckstern v. Sutton,* 319 Md. 634, 574 A.2d 898, *cert. denied,* 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990). He, however, had no vested right to parole at all under Maryland law, whether in the custody of Patuxent Institution or the Division of Correction. *Bryant v. Maryland,* 848 F.2d 492 (4th Cir.1988). There is no indication that the petitioner has ever applied for parole or otherwise is in a position where he has been affected by any change in Maryland's parole rules, or has in fact otherwise suffered any *ex post facto* consequences from the change in such laws or from his transfer from Patuxent Institution. *See California Dept. of Corrections v. Morales,* 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). In light of *Morales,* the state post-conviction court's conclusion that whatever consequence might attend petitioner's transfer *vis-a-vis* his parole eligibility did not violate the *ex post facto* clause is not contrary to, nor did it involve an unreasonable application of, clearly-established federal law. Hence, no relief is available on that contention under 28 U.S.C. § 2254(d), as amended.

■ Petitioner also alleges that the post-conviction court erred in failing to rule on the merits of his challenge to the admissibility of a pretrial identification. Such a claim is plainly barred by the rule in *Bryant v. Maryland, supra.* To the extent that the petitioner frames this contention as an instance of ineffective assistance of appellate counsel, he recognizes, as he must, that both the issue of prompt presentment and of improper identification testimony were in fact presented on appeal, and appellate counsel is only faulted by him for failing to link the two contentions by specifically arguing that the identification should have been barred as poisoned fruit of the delayed presentment. To the extent this was raised at all in the PCPA court, which this Court simply doubts, the PCPA court's general finding that appellate counsel acted reasonably in "weeding out" unmeritorious claims on appeal, does not stand contrary to clearly established federal law, nor is it an unreasonable application thereof. *Strickland v. Washington, supra; Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Smith v. South Carolina,* 882 F.2d 895 (4th Cir.1989), *cert. denied,* 493 U.S. 1046, 110 S.Ct. 843, 107 L.Ed.2d 838 (1990). Here, appellate counsel strongly attacked both the prompt presentment issue and the identification issue, and her failure specifically to link the two certainly does not involve professionally unreasonable conduct and prejudice in the required sense under *Strickland.*

■ Finally, the petitioner raises an issue under the rule in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), arguing that there were improper references at his trial to the confession or statement of a co-defendant, who was not available to testify at trial, that inculpated him. This claim was not addressed at post-conviction on the merits, the post-conviction court holding that the issue was waived, as the defendant did not raise it on direct appeal. PCPA op. at 6. In that the Court cannot determine on the face of the petition whether there is any merit to the *Bruton* claim in the first place, or whether it was procedurally defaulted and now barred because such procedural default was the result of attorney error not amounting to constitutional ineffectiveness, *see Giarratano v. Procunier,* 891 F.2d 483 (4th Cir.1989), *cert. denied,* 498 U.S. 881, 111 S.Ct. 222, 112 L.Ed.2d 178 (1990), the Court will direct the respondent to answer this contention within 90 days of the date hereof. The other contentions discussed *ante* need not be answered, as they are summarily dismissed.